TUCKER ELLIS LLP
ALEXANDER J.L. KAPLAN  SBN 308257
alexander.kaplan@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, California 90071
Telephone:    213.430.3400
Facsimile:    213.430.3409

Attorneys for Plaintiff Crown Castle USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROWN CASTLE USA, INC., a Pennsylvania corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNLIMITED COMMUNICATIONS, INC., a California corporation; and CHRISTOPHER HERR, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br> (1) **BREACH OF WRITTEN CONTRACT**<br> (2) **BREACH OF EXPRESS/CONTRACTUAL INDEMNITY**<br> (3) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br> (4) **BREACH OF IMPLIED COVENANT TO PERFORM WORK IN A GOOD AND COMPETENT MANNER**<br> (5) **CONVERSION**<br> (6) **VIOLATION OF PENAL CODE § 496**<br> (7) **INTENTIONAL MISREPRESENTATION**<br> (8) **NEGLIGENT MISREPRESENTATION**<br> (9) **CONCEALMENT**<br> (10) **QUASI-CONTRACT/UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Crown Castle USA, Inc. ("Crown") brings this action against defendants Unlimited Communications, Inc. ("UCI") and Christopher Herr (himself, "Herr," and together with UCI, collectively, "Defendants"), and alleges as follows:

1

COMPLAINT

I.    **INTRODUCTION**

1.    Crown hired UCI to perform certain construction work known as the "Network West Area Volume Project San Mateo Bundle" under certain written agreements.

2.    At all times relevant hereto, UCI is and was owned, operated and controlled by its Chief Executive Officer, Herr, in such a manner that UCI had no separate mind of its own, and such that the separate personalities of UCI and Herr did not exist.

3.    Herr is therefore individually and personally liable for any and all damages that UCI owes to Crown in this matter.

4.    As detailed below, UCI and Herr failed to fulfill their duties and obligations to Crown, including, but not limited:

   (a)    misappropriating Project funds paid by Crown to UCI;

   (b)    failing to pay subcontractors and material suppliers;

   (c)    failing to obtain lien waivers or releases from subcontractors and material suppliers;

   (d)    failing to provide subcontractors' or material suppliers' lien waivers or releases to Crown;

   (e)    performing deficient and substandard work (including, but not limited to, multiple utility strikes and improper restoration);

   (f)    causing the City of San Mateo to issue a stop work order;

   (g)    threatening to abandon the Project; and

   (h)    converting millions of dollars of equipment and materials belonging to Crown and others.

5.    Crown brings the following causes of actions to recover its damages incurred as a result of UCI and Herr's aforementioned actions and inactions.

II.    **THE PARTIES**

6.    Crown is a Pennsylvania corporation with its principal place of business in Pennsylvania.

7.    UCI is a California corporation with its principal place of business in Woodland, California.

8.     Herr is an individual domiciled in California. Herr resides at 22233 E Copperopolis Road, Linden, California 95236, and is UCI's chief executive officer.

## III.    JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). There is complete diversity between Crown (a citizen of Pennsylvania and Texas), and Defendants (citizens of California), and the amount in controversy exceeds $75,000.

10.     This Court has personal jurisdiction over Defendants because both UCI and Herr are "at home" in California—that is, UCI is incorporated and maintains its principal place of business in California, and Herr is a citizen of California who resides in and plans to continue residing in California. Therefore, Defendants are subject to general jurisdiction in California.

11.     Both UCI and Herr are also subject to specific personal jurisdiction in California because they purposefully availed themselves of the privileges of conducting business in California. UCI agreed to and did perform under the subject contract in California. Herr, as UCI's CEO, oversaw UCI's performance under the contract, communicated on its behalf, and, Crown is informed and believes, wrongfully maintained possession of certain personal property belonging to Crown in California.

12.     This Court is the proper venue for this Complaint pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district. UCI was to perform the subject contract in San Mateo, California, and Crown is informed and believes, and on that basis alleges, that Herr wrongfully took possession of certain of Crown's personal property from the project site in San Mateo, California. UCI was and is headquartered in California, and Herr's primary residence is located in California.

## IV.    DIVISIONAL ASSIGNMENT

13.     Pursuant to Civil L.R. 3-2(c) and (d), this action is properly assigned to the San Francisco Division or the Oakland Division because a substantial part of the events or omissions giving rise to Crown's claims occurred in the county of San Mateo.

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

3

COMPLAINT

## V.    FACTUAL BACKGROUND

### A.    Agreements and Project Background.

14.    Crown and UCI entered into a Construction Services Master Agreement dated June 15, 2016. A true and correct copy of this "Master Agreement" is attached hereto as **Exhibit 1**.

15.    Crown would then utilize a "Project Appendix" incorporating the terms of this Master Agreement to hire UCI for specific construction projects.

16.    Relevant here, Crown hired UCI to act as the general contractor for the Network West Area Volume Project San Mateo Bundle ("Project") pursuant to the March 11, 2023 Project Appendix. A true and correct copy of this "Original Project Appendix" is attached hereto as **Exhibit 2**.

17.    The Project, generally, involved construction work largely in the public right-of-way (*e.g.*, roadways and sidewalks), including excavation and trenching, followed by the installation of fiberoptic cable, and then restoration of the area.

18.    Under the Original Project Appendix, Crown made a $2,000,000 upfront payment to UCI to purchase a bore rig and other equipment for the Project. The Original Project Appendix provided that ". . . Crown Castle [could] withhold or deduct all or a portion of the cost of the bore rig from any payments due to [UCI], until [UCI] satisfactorily perform[ed] $2,000,000 of Work on the Project to Crown Castle's satisfaction." Ex. 2 at 2.

19.    Crown had and has a right to possess the bore rig because, *inter alia*, UCI did not complete the Project with the bore rig and owes Crown amounts in excess of the value of the bore rig. UCI therefore has not reimbursed Crown for its approximately $2,000,000 payment to UCI for the bore rig.

20.    UCI performed certain work on the Project itself and hired subcontractors to perform certain other work on the Project.

21.    In addition to the bore rig, Crown purchased certain materials (*e.g.*, fiber reels, splicing materials) for use on the Project and provided those materials to UCI for installation ("Crown Materials").

22.    Crown's customers purchased certain equipment that was to be installed on the Project ("Customer Materials"), which Crown provided to UCI for installation.

23.    From approximately March 2023 through April 2024, UCI and its subcontractors performed work on the Project.

COMPLAINT

24. On October 18, 2023, Crown and UCI entered into the First Amendment to the Project Appendix to correct certain typographical errors in the Original Project Appendix, which are not germane to this dispute. A true and correct copy of the First Amendment to the Project Appendix is attached hereto as **Exhibit 3**.

**B.     Project Issues and Crown's Damages.**

25. On or around February 6, 2024, Crown received a request from UCI for advanced payment of additional sums to complete the Project.

26. This request prompted Crown to review UCI's invoices submitted for the Project.

27. Crown was entitled to a $2,000,000 credit for its prepayment under the Original Project Appendix, so UCI should not have charged Crown for the first $2,000,000-worth of work UCI or its subcontractors performed on the Project.

28. Instead of applying the credit to which Crown was entitled, UCI invoiced Crown and accepted payments from Crown for the first $2,000,000-worth of work UCI or its subcontractors performed on the Project. In so doing, UCI demanded and accepted double payment from Crown.

29. UCI also invoiced Crown for work that had not actually been performed.

30. Upon information and belief, UCI used money Crown had provided it for use on the Project to instead buy materials and services for UCI and Herr's personal use and benefit.

31. On February 15, 2024, UCI informed Crown that UCI might stop work due to financial issues.

32. In an attempt to salvage the Project from the consequences of UCI's mismanagement, UCI and Crown executed a March 19, 2024 Project Appendix ("Repayment Plan"), which memorialized a framework for UCI to reimburse Crown for its overpayments to UCI, and to create a definitive schedule for UCI to complete the Project, including "81,000 feet of fiber optic cable route construction." A true and correct copy of the Repayment Plan is attached hereto as **Exhibit 4**.

33. In the Repayment Plan, UCI agreed and admitted that it had been prepaid $4,336,894, and that this amount was still "contractually due and owing by [UCI] to Crown" as of March 19, 2024. Ex. 4 at 1.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071   213.430.3400

34. Further, the "Work performed by [UCI] and reduction of the Amount Due is subject to Crown Castle's Acceptance of the Work based on its inspection and written approval of the Work, and [UCI] providing all necessary Lien Waivers (from current and prior work performed) and Close-Out documents are required by the Master Agreement." Ex. 4 at 1.

35. The Repayment Plan went on to provide: "[R]econciliation of Work performed and reduction of the Amount Due shall be as follows: Crown Castle will release $250,000 of the Withheld Amount in exchange for actual Work performed and Accepted by Crown Castle valued at $1,000,000 (based on the above stated rates) and invoiced against the Amount Due." Ex. 4 at 1.

36. Subsequently, Crown learned that UCI's work was deficient and substandard, and caused damage to third parties. For example, while working on the Project, UCI, its subcontractors, or some combination thereof, struck utility lines on multiple occasions, resulting in significant road damage and impact on homeowners.

37. UCI's substandard work included numerous electrical and sewer strikes on both private and municipal property. Each of these strikes violated Crown's Utility Avoidance Standard.

38. Each of these issues presented unacceptable risks and safety concerns.

39. Moreover, UCI's defective work ultimately resulted in the City of San Mateo issuing a stop work order because among many other errors and missteps, UCI hit a water mainline, resulting in flooding and damage to nearby residential homes.

40. Shortly thereafter, Crown received notice from the City of San Mateo that UCI's previous work on the Project was deficient, and final restoration had to be remediated by another contractor approved by the City.

41. Then, on April 29, 2024, due to UCI's subpar work, the City of San Mateo formally banned Crown and, by extension, UCI, from performing work within the city limits.

42. Crown therefore had no choice but to terminate UCI under the applicable contracts, and to then hire and pay a third party to remediate UCI's defective work, as well as to complete the work UCI failed to finish on the Project.

43. Further, UCI was contractually required to obtain a lien waiver or release from each subcontractor or material supplier when it paid that subcontractor or material supplier's invoice. When it

6

COMPLAINT

submitted its own invoices or payment applications, UCI was to also submit each of the lien waivers or releases to Crown. UCI failed to obtain and submit lien waivers or releases from the subcontractors or material suppliers as required under the parties' written agreements. It was not until much later that Crown learned why UCI had failed to perform these obligations.

44. Despite Crown having paid UCI $4,336,894 to that point, after the parties executed the Repayment Plan, Crown received several complaints from UCI's subcontractors that they had not been paid by UCI for work they claimed to have performed on the Project.

45. Since then, Crown has received numerous claims from, and been named in lawsuits filed by, subcontractors asserting that UCI failed to pay them even though Crown had paid UCI more than it was owed for the work performed.

46. Making matters worse, in June 2024, Crown attempted to account for the Crown Materials and Customer Materials provided to UCI during the Project, which UCI should have either installed in the Project or stored at UCI's warehouse yards.

47. After an extensive investigation, including numerous communications with UCI and trips to UCI's warehouse yards, Crown learned that millions of dollars' worth of Crown Materials and Customer Materials were missing—*i.e.*, they were neither installed into the Project, nor stored at UCI's warehouse yards.

48. As a result of UCI's actions and inactions described above, and as will be further revealed in discovery, Crown has suffered, and continues to suffer, significant damages. Crown's damages include, but are not limited to, the following:

      (a)    missing Crown Materials and Customer Materials;

      (b)    cost to remediate, repair and complete UCI's work on the Project;

      (c)    potential liabilities (which are denied) to UCI's subcontractors;

      (d)    unearned prepayments, including for the bore rig, other prepaid materials, and work not performed or earned; and

      (e)    attorneys' fees, costs, expenses and interest.

**C.    Alter Ego/Piercing the Corporate Veil.**

49. Crown contracted with UCI to serve as the general contractor for the Project.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071   213.430.3400

7

50. As detailed below, there is such a unity of interest and ownership between Herr and UCI that the separate personalities of the corporation and individual no longer exist and if the acts of UCI set forth herein are treated as those of UCI alone, an inequitable result will follow.

51. Herr is and at all times relevant hereto was the Chief Executive Officer of UCI.

52. Upon information and belief, Herr is the sole owner and shareholder of UCI, which is a California corporation.

53. Upon information and belief, Herr is the sole director and officer for UCI.

54. Upon information and belief, Herr and UCI comingled funds and other assets. In that connection, Crown is informed and believes, and on that basis alleges that Herr is the registered owner of twelve motor vehicles, several of which are commercial vehicles used solely by UCI to conduct it business.

55. Upon information and belief, Herr and UCI diverted funds provided by Crown to UCI for work on the Project to purchase materials and services unrelated to the Project and for the personal benefit of Herr and other companies he owned, controlled, and/or operated.

56. Upon information and belief, Herr and UCI diverted Crown Materials, Customer Materials and the bore rig provided by Crown to UCI for work on the Project for the personal benefit of Herr and other companies he owned, controlled, and/or operated.

57. Upon information and belief, Herr and UCI did not maintain minutes or adequate corporate records.

58. Upon information and belief, Herr and UCI disregarded corporate formalities.

59. Upon information and belief, UCI had an absence of corporate assets and inadequate capitalization.

60. Upon information and belief, Herr has started a new company to perform the same type of construction work as that done on the Project (installing fiberoptic cables), which new company Herr owns, operates, and/or controls.

61. Upon information and belief, Herr diverted from UCI to this new company funds and materials provided to UCI by Crown in order to benefit this new company and hide these funds and materials from Crown.

8

62.    Adherence to the fiction of the separate existence between UCI and Herr would sanction a fraud and promote injustice, including, but not limited to:

(a)    allowing Herr to divert assets from UCI to start a new construction company and to shield them from collection by Crown, who is rightfully owed significant restitution as set forth herein;

(b)    allowing Herr to enjoy the benefit of assets provided by Crown to UCI, which he diverted for his own personal use and gain;

(c)    allowing Herr to escape liability for fraud that he personally committed through the guise of UCI; and

(d)    allowing Herr to escape liability for his conversion of funds and materials that he personally committed through the guise of UCI.

63.    Each of the foregoing is true and applicable to each and every claim and cause of action set forth herein by Crown.

64.    Every action or inaction taken by UCI relevant to this lawsuit was personally performed by or personally directed by Herr.

65.    As a result of the foregoing, there is such a unity of interest and ownership between Herr and UCI that the separate personalities of the corporation and individual no longer exist and if the acts of UCI set forth herein are treated as those of UCI alone, an inequitable result will follow.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Breach of Written Contract Against UCI and Herr)

66.    Crown incorporates by reference all the allegations contained in the preceding paragraphs.

67.    As detailed above, Crown and UCI entered into the: (1) Master Agreement on June 15, 2016; (2) Original Project Appendix on March 11, 2023; and (3) First Amendment to the Project Appendix on October 18, 2023 (Master Agreement, Original Project Appendix, and First Amendment to the Project Appendix, collectively, "Project Agreements").

68.    The Project Agreements were supported by good and valuable consideration.

COMPLAINT

69. Crown did all, or substantially all, of the significant things that the Project Agreements required Crown to do, except for those Crown was excused from having to do.

70. From approximately March 2023 through March 18, 2024, the Project Agreements governed Crown and UCI's conduct in connection with the Project.

71. In February 2024, UCI began to learn of UCI's mismanagement of the Project, as well as numerous breaches of the Project Agreements.

72. In an attempt to salvage UCI's mismanagement of the Project, the parties entered into the Repayment Plan on March 19, 2024 as a supplement to the Project Agreements, in which UCI acknowledged breaching the Project Agreements.

73. Crown did all, or substantially all, of the significant things that the Repayment Plan required Crown to do, except for those Crown was excused from having to do.

74. However, UCI continued to breach the Project Agreements and the Repayment Plan.

75. UCI committed numerous material breaches of the Project Agreements and Repayment Plan, including, but not limited to:

(a) misappropriating Project funds paid by Crown to UCI;

(b) failing to pay subcontractors or material suppliers;

(c) failing to obtain lien waivers or releases from subcontractors or material suppliers;

(d) failing to provide subcontractors' or material suppliers' lien waivers or releases to Crown;

(e) performing deficient and substandard work, including, but not limited to, multiple utility strikes and improper restoration;

(f) causing the City of San Mateo to issue a stop work order;

(g) threatening to abandon the Project; and

(h) converting millions of dollars' worth of Crown Materials, Customer Materials and the bore rig for personal use and gain.

76. Herr personally performed or directed any and all of UCI's actions or inactions that constitute a breach of the Project Agreements and Repayment Plan.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071   213.430.3400

10

COMPLAINT

77.    As detailed above, Herr, through UCI, committed these breaches for personal gain and adherence to the fiction of a separate existence between UCI and Herr would sanction a fraud, promote injustice, and lead to an inequitable result.

78.    As a direct and proximate result of UCI and Herr's breaches of the Project Agreements and Repayment Plan, Crown has suffered, and continues to suffer, significant damages, including, but not limited to:

(a)    missing Crown Materials and Customer Materials;

(b)    cost to remediate and complete UCI's work on the Project;

(c)    potential liabilities (which are denied) to UCI's subcontractors;

(d)    unearned payments on the Project, including for the bore rig, other prepaid materials, and work not performed or earned; and

(e)    attorneys' fees, costs, expenses and interest.

**SECOND CLAIM FOR RELIEF**

**(Breach of Express/Contractual Indemnity Against UCI and Herr)**

79.    Crown incorporates by reference all the allegations contained in the preceding paragraphs.

80.    Crown and UCI entered into the Project Agreements and Repayment Plan for good and valuable consideration.

81.    Crown did all, or substantially all, of the significant things that the Project Agreements and Repayment Plan required Crown to do, except for those Crown was excused from having to do.

82.    UCI was and is required to "indemnify, defend and hold harmless [Crown] . . . from and against any and all suits, actions, proceedings, losses, damages, claims, fines, penalties, costs and expenses (including reasonable attorneys' fees, investigation and remediation expenses)" incurred by Crown as a result of UCI's actions and inactions relating to the Project. Ex. 1 at § 11(A).

83.    UCI's indemnity obligations to Crown were triggered by UCI's numerous breaches of the Project Agreements and Repayment Plan described above, including, but not limited to:

(a)    failing to pay subcontractors or material suppliers resulting in them asserting claims and lawsuits against Crown;

(b)    misappropriating Project funds and materials provided by Crown to UCI; and

11

COMPLAINT

(c)      performing deficient and substandard work on the Project requiring Crown to hire third parties to remediate and repair said work.

84.      Crown demanded that UCI indemnify, defend and hold Crown harmless as a result of its breaches of the Project Agreements and Repayment Plan.

85.      UCI refused to honor and discharge its obligations indemnify, defend and hold Crown harmless, which is a breach of its express indemnity obligations under the Project Agreements and Repayment Plan.

86.      Herr personally performed or directed any and all of UCI's actions or inactions that constitute a breach of UCI's express indemnity obligations under the Project Agreements and Repayment Plan.

87.      As detailed above, Herr, through UCI, committed these breaches for personal gain and adherence to the fiction of a separate existence between UCI and Herr would sanction a fraud, promote injustice, and lead to an inequitable result.

88.      As a direct and proximate result of UCI and Herr's breaches of UCI's express indemnity obligations under the Project Agreements and Repayment Plan, Crown has suffered, and continues to suffer, significant damages, including, but not limited to:

(a)      missing Crown Materials and Customer Materials;

(b)      cost to remediate and complete UCI's work on the Project;

(c)      potential liabilities (which are denied) to UCI's subcontractors;

(d)      unearned payments on the Project, including for the bore rig, other prepaid materials, and work not performed or earned; and

(e)      attorneys' fees, costs, expenses and interest.

**THIRD CLAIM FOR RELIEF**

**(Breach of Implied Covenant of Good Faith and Fair Dealing Against UCI and Herr)**

89.      Crown incorporates by reference all the allegations contained in the preceding paragraphs.

90.      Crown and UCI entered into the Project Agreements and Repayment Plan for good and valuable consideration.

12

COMPLAINT

91. In every contract or agreement, including the Project Agreements and Repayment Plan, there is an implied covenant of good faith and fair dealing.

92. Crown did all, or substantially all, of the significant things that the Project Agreements and Repayment Plan required Crown to do, except for those Crown was excused from having to do.

93. Crown did not receive the benefits under the Project Agreements and Repayment Plan because UCI, amongst other things:

    (a)    misappropriated Project funds paid by Crown to UCI;

    (b)    failed to pay subcontractors and material suppliers;

    (c)    failed to obtain lien waivers or releases from subcontractors and material suppliers;

    (d)    failed to provide subcontractors' or material suppliers' lien waivers or releases to Crown;

    (e)    performed deficient and substandard work (including, but not limited to, multiple utility strikes and improper restoration);

    (f)    caused the City of San Mateo to issue a stop work order;

    (g)    threatened to abandon the Project;

    (h)    converted millions of dollars' worth of Crown Materials, Customer Materials and the bore rig for personal use and gain; and

    (i)    failed to indemnify Crown as required under the applicable contracts.

94. In doing so, UCI did not act fairly and in good faith thereby breaching the implied covenant of good faith and fair dealing.

95. Herr personally performed or directed any and all of UCI's actions or inactions that constitute a breach of the implied covenant of good faith and fair dealing.

96. As detailed above, Herr, through UCI, committed these breaches for personal gain and adherence to the fiction of a separate existence between UCI and Herr would sanction a fraud, promote injustice, and lead to an inequitable result.

97. As a direct and proximate result of UCI and Herr's breaches of the implied covenant of good faith and fair dealing, Crown has suffered, and continues to suffer, significant damages, including, but not limited to:

COMPLAINT

(a)    missing Crown Materials and Customer Materials;

(b)    cost to remediate and complete UCI's work on the Project;

(c)    potential liabilities (which are denied) to UCI's subcontractors;

(d)    unearned payments on the Project, including for the bore rig, other prepaid materials, and work not performed or earned; and

(e)    attorneys' fees, costs, expenses and interest.

### FOURTH CLAIM FOR RELIEF

### (Breach of Implied Covenant to Perform Work in a Good and

### Competent Manner Against UCI and Herr)

98.    Crown incorporates by reference all the allegations contained in the preceding paragraphs.

99.    Crown and UCI entered into contracts (the Project Agreements and Repayment Plan) for good and valuable consideration for UCI to serve as the general contractor to install fiberoptic cable (*i.e.*, the Project).

100.    In every construction contract or agreement, including the Project Agreements and Repayment Plan, there is an implied covenant for the contractor (here, UCI) to perform its work in a good and competent manner.

101.    Crown did all, or substantially all, of the significant things that the Project Agreements and Repayment Plan required Crown to do, except for those Crown was excused from having to do.

102.    UCI failed to perform its work on the Project in a good competent manner by, amongst other things, performing deficient and substandard work (including, but not limited to, multiple utility strikes and improper restoration) and causing the City of San Mateo to issue a stop work order;

103.    Herr personally performed and/or directed any and all of UCI's actions or inactions that constitute a breach of the implied covenant to perform its work in a good and competent manner.

104.    As detailed above, Herr, through UCI, committed these breaches for personal gain and adherence to the fiction of a separate existence between UCI and Herr would sanction a fraud, promote injustice, and lead to an inequitable result.

14

105. As a direct and proximate result of UCI and Herr's breaches of the implied covenant to perform their work in a good and competent manner, Crown has suffered, and continues to suffer, significant damages, including, but not limited to:

(a) cost to remediate and complete UCI's work on the Project;

(b) potential liabilities (which are denied) to UCI's subcontractors; and

(c) attorneys' fees, costs, expenses and interest.

## FIFTH CLAIM FOR RELIEF

### (Conversion Against UCI and Herr)

106. Crown incorporates by reference all the allegations contained in the preceding paragraphs.

107. Crown had and has a right to possess its prepayment of $2,000,000 made to UCI for the bore rig, the Crown Materials provided to UCI, and the Customer Materials provided to UCI (collectively, "Crown's Property").

108. UCI, Herr, or both substantially interfered with Crown's Property by knowingly and intentionally taking possession of Crown's Property and destroying or refusing to return Crown's Property after Crown demanded its return.

109. UCI, Herr, or both substantially interfered with the bore rig by knowingly and intentionally taking possession of the bore rig and destroying or refusing to return it after Crown demanded its return.

110. Crown did not consent to these interferences with Crown's Property or the bore rig, and was harmed as a direct and proximate result totaling millions of dollars in losses.

111. UCI's conduct was a substantial factor in causing Crown's harm and it was reasonably foreseeable that special injury or harm would result from this conversion.

112. Reasonable care on Crown's part would not have prevented the loss.

113. Herr personally performed and/or directed any and all of UCI's actions or inactions that constitute conversion in this lawsuit.

114. As detailed above, Herr, through UCI, committed these actions for personal gain and adherence to the fiction of a separate existence between UCI and Herr would sanction a fraud, promote injustice, and lead to an inequitable result.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071   213.430.3400

115.    UCI and Herr are therefore liable to Crown for its damages incurred as a result of their conversion, including $2,000,000, fair market value of Crown Materials and Customer Materials, and reasonable compensation for the time and money spent by Crown in attempting to recover Crown's Property.

116.    Crown also seeks to recover possession of the Crown Property and the bore rig, which UCI, Herr, or both have unlawfully retained despite Crown's demands for their return. Crown is informed and believes, and on that basis alleges, that UCI, Herr, or both are keeping the Crown Property, the bore rig, or both at 22233 E. Copperopolis Road, Linden, California 95236, where Herr maintains not only a residence, but also various vehicles and equipment stored both outdoors and inside a multi-thousand-square foot warehouse.

117.    Neither UCI nor Herr has any legitimate ownership interest in the Crown Property or the bore rig. Rather, Crown is the sole and proper owner of both the Crown Property and the bore rig.

118.    Crown is informed and believes, and on that basis alleges that UCI, Herr, or both initially obtained possession of the Crown Property and the bore rig in the ordinary course of business for commercial purposes.

119.    Crown is informed and believes, and on that basis alleges that it is more likely than not to obtain a judgment against UCI and Herr on this claim and, therefore, a writ of possession and turnover orders are warranted.

120.    Further, Crown is informed and believes, and on that basis alleges that UCI and Herr's above-described wrongful acts were intentional, malicious, oppressive, or fraudulent. Crown is further informed and believes, and on that basis alleges that UCI and Herr carried on their above-described wrongful acts with a willful and conscious disregard of Crown's rights, such that Crown is entitled to recover punitive damages against UCI and Herr, and each of them, in an amount that is sufficient and appropriate to punish them as well as to deter them from committing similar acts in the future.

## SIXTH CLAIM FOR RELIEF

### (Violation of Penal Code § 496 against UCI and Herr)

121.    Crown incorporates by reference all the allegations contained in the preceding paragraphs.

122.    Crown is informed and believes, and on that basis alleges that UCI misappropriated or embezzled money and materials belonging to Crown.

123.    UCI received transfers from Crown's bank account in the net amount of $4,336,894, which money, in whole or in part, rightfully belongs, and at all times did rightfully belong, to Crown.

124.    UCI received Crown Materials, Customer Materials and the bore rig, which, in whole or in part, rightfully belongs to Crown.

125.    Crown made written demand for the return of its money, Crown Materials, Customer Materials and/or the bore rig ("Converted Property"), including on July 23, 2024 and August 9, 2024.

126.    UCI refused to return the Converted Property.

127.    Upon information and belief, UCI and/or Herr transferred the Converted Property, in whole or in part, to other bank accounts and locations for their own personal gain.

128.    Crown is informed and believes, and on that basis alleges that Herr had actual or constructive knowledge of UCI's receipt of the Converted Property, in whole or in part, and its illicit nature. Hence, when Herr expressed UCI's and his refusal to return the Converted Property to Crown, Herr's knowledge and intent were UCI's.

129.    Thus, UCI and Herr, and each of them, received, obtained, or possessed the Converted Property, in whole or in part, or withheld or aided and abetted in withholding the Converted Property knowing it had been taken from Crown by means constituting "theft," as defined in California Penal Code § 484. In so doing, UCI and Herr, and each of them, has violated Penal Code § 496(a).

130.    Further, Herr personally performed and/or directed any and all of UCI's actions or inactions that violate Penal Code § 496.

131.    As detailed above, Herr, through UCI, committed these acts for personal gain and adherence to the fiction of a separate existence between UCI and Herr would sanction a fraud, promote injustice, and lead to an inequitable result.

132.    As a direct and proximate result of UCI and Herr's violation(s) of Penal Code § 496(a), Crown has sustained actual damages in an amount greater than $5,000,000, to be proven at trial.

17

133. Accordingly, under Penal Code § 496(c), UCI and Herr are jointly liable to Crown for three times the amount of actual damages sustained, plus costs and attorneys' fees incurred, in an amount to be proven at trial.

134. Crown is informed and believes, and on that basis alleges that UCI and Herr's above-described wrongful acts were intentional, malicious, oppressive, or fraudulent. Crown is further informed and believes, and on that basis alleges that UCI and Herr carried on their above-described wrongful acts with a willful and conscious disregard of Crown's rights, such that Crown is entitled to recover punitive damages against UCI and Herr, and each of them, in an amount that is sufficient and appropriate to punish them as well as to deter them from committing similar acts in the future.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Misrepresentation against UCI and Herr)

135. Crown incorporates by reference all the allegations contained in the preceding paragraphs.

136. Herr, on behalf of himself and UCI, made numerous intentional misrepresentations to Crown regarding the Project, including, but not limited to, that:

(a) UCI would utilize the $2,000,000 prepayment made by Crown to purchase equipment, such as a bore rig, and not invoice Crown for the performance of the first $2,000,000 worth of Work on the Project;

(b) UCI would pay and was paying its subcontractors and material suppliers;

(c) UCI would use Crown's payments on the Project for the benefit of the Project;

(d) the Project was proceeding on time and without financial issues;

(e) UCI and its subcontractors had actually performed the work for which UCI was invoicing Crown;

(f) UCI and Herr did not know where the missing Crown Materials and Customer Materials were; and

(g) UCI and Herr were in financial distress.

137. Herr and UCI knew that the foregoing representations were false when they made them recklessly and without regard for their truth.

138. Herr and UCI intended for Crown to rely on these representations.

18

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071   213.430.3400

139. Crown reasonably relied on these representations.

140. Crown's reliance on these representations was a substantial factor in causing its harm.

141. If Crown had known these representations were false, Crown would have reasonably behaved differently, including, but not limited to, not making some or all of the payments to UCI, not sending some or all of the Crown Materials and Customer Materials to UCI, attempting to retrieve the Crown Materials and Customer Materials earlier, and terminating UCI from the Project earlier.

142. Herr personally made the foregoing representations and/or directed employes of UCI to make these representations.

143. As detailed above, Herr, through UCI, made these representations for personal gain and adherence to the fiction of a separate existence between UCI and Herr would sanction a fraud, promote injustice, and lead to an inequitable result.

144. As a direct and proximate result of UCI and Herr's intentional misrepresentations, Crown has been damaged in an amount to be proven at trial.

145. UCI and Herr's foregoing conduct was despicable and done maliciously, oppressively, and fraudulently, with the intent to deprive Crown of its rights with respect to the property and to due process, and to willfully and intentionally, or with a conscious disregard of Crown's rights, to cause injury to him. UCI and Herr are therefore subject to punitive and exemplary damages in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF

### (Negligent Misrepresentation against UCI and Herr)

146. Crown incorporates by reference all the allegations contained in the preceding paragraphs.

147. Herr, on behalf of himself and UCI, made numerous negligent misrepresentations to Crown regarding the Project, including, but not limited to, that:

    (a)    UCI would utilize the $2,000,000 prepayment made by Crown to purchase equipment, such as a bore rig, and not invoice Crown for the performance of the first $2,000,000 worth of Work on the Project;

    (b)    UCI would pay and was paying its subcontractors and material suppliers;

    (c)    UCI would use Crown's payments on the Project for the benefit of the Project;

19

COMPLAINT

(d)    the Project was proceeding on time and without financial issues;

(e)    UCI and its subcontractors had actually performed the work for which UCI was invoicing Crown;

(f)    UCI and Herr did not know where the missing Crown Materials and Customer Materials were; and

(g)    UCI and Herr were in financial distress.

148.    Herr and UCI may have honestly believed that the foregoing representations were true, in whole or in part, but they had no reasonable grounds for believing the foregoing representations were true, in whole or in part, when they made them.

149.    Herr and UCI intended for Crown to rely on these representations.

150.    Crown reasonably relied on these representations.

151.    Crown's reliance on these representations was a substantial factor in causing its harm.

152.    If Crown had known these representations were false, Crown would have reasonably behaved differently, including, but not limited to, not making some or all of the payments to UCI, not sending some or all of the Crown Materials and Customer Materials to UCI, attempting to retrieve the Crown Materials and Customer Materials earlier, and terminating UCI from the Project earlier.

153.    Herr personally made the foregoing representations and/or directed employes of UCI to make these representations.

154.    As further detailed above, Herr, through UCI, made these representations for personal gain and adherence to the fiction of a separate existence between UCI and Herr would sanction a fraud, promote injustice, and lead to an inequitable result.

155.    As a direct and proximate result of UCI and Herr's negligent misrepresentations, Crown has been damaged in an amount to be proven at trial.

### NINTH CLAIM FOR RELIEF

### (Concealment against UCI and Herr)

156.    Crown incorporates by reference all the allegations contained in the preceding paragraphs.

20

COMPLAINT

157. Crown and UCI were parties to a construction contract (Project Agreements and Repayment Plan) for the Project and UCI and Herr failed to disclose certain facts to Crown relating to the Project.

158. UCI and Herr disclosed some facts to Crown, but intentionally failed to disclose other facts to Crown making the disclosure deceptive, including, but not limited to, that:

    (a)    UCI planned to use the $2,000,000 prepayment made by Crown, in whole or in part, to purchase materials and services for the personal benefit of UCI and Herr and not for the benefit of the Project;

    (b)    UCI was using Crown's other payments on the Project for the personal benefit of UCI and Herr, not for the benefit of the Project;

    (c)    UCI was not paying its subcontractors and suppliers;

    (d)    the Project had numerous workmanship and financial issues;

    (e)    UCI and Herr were diverting materials received on the Project (Crown Materials and Customer Materials) for their own personal use, not for the benefit of the Project; and

    (f)    UCI and its subcontractors had not performed the work for which UCI was invoicing Crown.

159. UCI and Herr prevented Crown from discovering certain facts that would have revealed UCI and Herr's failure to disclose the foregoing concealed facts.

160. Crown did not know of the concealed facts.

161. If Crown had known of the concealed facts, Crown would have reasonably behaved differently, including, but not limited to, not making some or all of the payments to UCI, not sending some or all of the Crown Materials and Customer Materials to UCI, attempting to retrieve the Crown Materials and Customer Materials earlier, and terminating UCI from the Project earlier.

162. Crown was harmed in an amount to be proved at trial as a result of the UCI and Herr's concealment of these facts.

163. UCI and Herr's concealment of these facts was a substantial factor in causing Crown's harm.

21

COMPLAINT

164. Herr personally concealed the foregoing facts and/or directed employes of UCI to conceal the foregoing facts.

165. As detailed above, Herr, through UCI, concealed these facts for personal gain and adherence to the fiction of a separate existence between UCI and Herr would sanction a fraud, promote injustice, and lead to an inequitable result.

166. As a direct and proximate result of UCI and Herr's concealment of facts, Crown has been damaged in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

### (Quasi-Contract/Unjust Enrichment against UCI and Herr)

167. Crown incorporates by reference all the allegations contained in the preceding paragraphs.

168. Solely to the extent it is held that the Project Agreements and Repayment Plan do not control or cover the relief sought herein by Crown for its damages, in whole or in part, Crown asserts a claim of quasi-contract or unjust enrichment against UCI and Herr.

169. Crown conferred a benefit upon UCI and Herr, specifically monetary payments and supplying UCI and Herr with Crown Materials, Customer Materials and the bore rig.

170. Crown provided these benefits pursuant to UCI and Herr's request.

171. UCI and Herr received these benefits, which were not gratuitously rendered and for which Crown reasonably expected UCI and Herr to perform services in return for receiving these benefits.

172. UCI and Herr did not, in whole or in part, perform the services promised in exchange for these benefits.

173. For the reasons set forth above, it would be unjust for UCI and Herr to retain these benefits, in whole or in part.

174. Herr personally performed and/or directed any and all of UCI's actions or inactions that form the basis of this cause of action.

175. As detailed above, Herr, through UCI, undertook these actions and inactions for personal gain and adherence to the fiction of a separate existence between UCI and Herr would sanction a fraud, promote injustice, and lead to an inequitable result.

COMPLAINT

176. As a direct and proximate result of UCI and Herr's intentional misrepresentations, Crown has been damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Crown Castle USA, Inc. prays for judgment against defendants Unlimited Communications, Inc. and Chrisotpher Herr as follows:

1. For actual damages according to proof, but not less than $9,000,000;

2. For treble damages under Penal Code § 496(c);

3. For claim and delivery via turnover orders and writs of possession granting Crown access to 22233 E. Copperopolis Road, Linden, California 95236, including any structure(s) constructed there, for the purpose of retrieving the Crown Property and bore rig and authorizing appropriate law enforcement to assist Crown in retrieving the Crown Property and bore rig from UCI or Herr's unlawful possession;

4. For punitive and exemplary damages under Civil Code § 3294 in an amount to be ascertained at trial;

5. For prejudgment and post-judgment interest on all damages awarded;

6. For an award of Crown's reasonable attorneys' fees, costs and expenses incurred in connection with this action as and to the extent authorized by law;

7. For an award of Crown's reasonable costs of suit herein incurred; and

8. For an award of such other and further relief as the Court may deem just and proper.

DATED: December 23, 2025                    TUCKER ELLIS LLP

                              By:  */s/ Alexander J.L. Kaplan*
                                   Alexander J.L. Kaplan
                                   Attorneys for Plaintiff Crown Castle USA, Inc.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071   213.430.3400

23

COMPLAINT